## Commonwealth v. Stitler

*Eugene G. Kitko*, Assistant District Attorney, for Commonwealth.

*F. Cortez Bell, Jr.*, for defendant.

PENTZ, P. J., August 18, 1960.—Chester William Stitler, defendant, was arrested for violation of section 724 of The Game Law of June 3, 1937, P. L. 1225, art. 7, 34 PS §1311.724, for killing three deer on November 16, 1959, with a .22 caliber rifle.

At a hearing held before Elizabeth C. Carns, justice of the peace, on November 24, 1959, defendant pleaded guilty and was fined $100 for each deer, or a total of $300, with costs of $9.

Defendant promptly presented a petition for certiorari from the judgment of the justice of the peace, on the ground that section 724 of The Game Law, above referred to, is an unreasonable and unconstitutional limitation on the right of defendant to protect his property, and violates article I, sec. 1, of the Constitution of Pennsylvania, which provides:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property and reputation, and of pursuing their own happiness."

Rule to show cause why certiorari should not be granted was issued. The Commonwealth and defendant then entered into a stipulation as follows:

"(1). That Certiorari shall issue in the above case.

"(2). That the facts shall be considered to be as follows:

"That Chester William Stitler and his family reside upon and operate a farm located at R.D. #2, DuBois, Clearfield County, Pennsylvania. That the crops growing upon the said farm of Chester William Stitler were damaged by deer and the said Chester William Stitler killed three deer with a .22 caliber rifle and notified the proper game authorities of such killing. That a .22 caliber rifle is the only firearm owned and in the possession of Chester William Stitler. That Chester William Stitler was arrested and charged with the killing of three deer which were damaging his corn crops on November 16, 1959, with the .22 caliber rifle in violation of the Act of June 3, 1937, P. L. 1225, Article VII, Section 724, known as the Game Laws and specifically sub-paragraph 2 of that section. That this proceeding shall be considered as if Certiorari was issued by this Court and the rule need not be made absolute.

"(3). That no hearing need be held as the Court may consider the matter upon the facts stipulated herein, with the only question for the Court being that of the constitutionality of sub-paragraph 2 of Section 724, Article VII of the Act of June 3, 1937, P. L. 1225, insofar as that section limits the right of a farmer to protect his crops from deer damage to the killing of such deer by means of firearms of not less than .25 caliber."

Section 724 of The Game Law has been subjected to several attacks upon its constitutionality. Subsection (1) of section 724, briefly, authorizes the killing of any wild animals or game, when destroying cultivated crops, fruit trees, vegetables, livestock, poultry, etc., provided the person who kills the game shall actually reside upon the ground, and his or her means of get-

ting a livelihood shall be actually farming, and depending upon the crops for a livelihood.

Subsection 2 of section 724, provides that:

"Any elk, deer, or bear may be legally killed only through the use of a firearm which discharges a single ball or bullet not smaller than a twenty-five calibre, under the foregoing provisions, provided a report is made as hereinafter required and other conditions stipulated are complied with; . . ."

The facts stipulated narrow the question before the court to the use of a .22 caliber rifle instead of a .25, or higher caliber, discharging a single ball or bullet. It is this particular provision of subsection 2 which is challenged as an unconstitutional limitation on the right of a citizen to protect his property.

The Commonwealth, on the other hand, takes the position that the right to protect one's property has not been destroyed by this subsection, but merely regulated.

Under the previous Game Law of May 24, 1923, P. L. 359, which has been reenacted into the present Game Law of 1937, in its essential features, the question of constitutionality of this particular species of regulatory legislation was before the courts in Commonwealth v. Gilbert, 5 D & C. 443. It was pointed out in this case that while the landowner had a right to kill the deer destroying his peach trees, he was required to report such killing to the game warden, just as provided in subsection 2 of section 724 of the present 1937 Game Law. The reason and purpose of The Game Law, requiring the reporting of game killed in protection of property, are discussed at some length. This case was then followed in Commonwealth v. Haugh, 12 D. & C. 795, again for failure to report the killing of a deer while destroying property of the killer, under The Game Law of May 14, 1925, P. L. 752. Again it was held that that section of The Game Law

did not violate article I, sec. 1, of the Constitution, in that it was purely regulatory, being enacted for the purpose of preventing elimination of wild life within the State, and that such a regulation was within the reasonable police power of the State.

In the enactment of The Game Law of 1937, section 724 and the subsections thereof, the right of the owner of land to kill game destroying his property was preserved. Section 724 of the 1937 Game Law, however, limits the right to kill game to those persons who operate a farm and grow crops thereon as their principal means of livelihood. This particular phase of subsection 1 of section 724 of The Game Law of 1937 was considered in Commonwealth v. Riggles, 39 D. & C. 188, and it was held that limiting the destruction of property to growing crops upon which the killer depended for a livelihood was a violation of article I, sec. 1, of the Constitution, in that it deprived everyone except a limited class, namely farmers, from protecting their property against destructive wild animals, Judge Hipple, then President Judge of Clinton County, stating on page 194:

"In our opinion, the owner, whether in whole or in part, of real estate has an indefeasible right to destroy a deer when necessary to protect his property. Therefore, insofar as Section 724 of the Game Law attempts to deprive him of this right it violates Article I, Section 1 of the Constitution, and is unconstitutional."

This ruling was followed in this county in Commonwealth v. Bloom, 21 D. & C. 2d 139. In this latter case, defendant shot a deer destroying his lawn and shrubbery, planted for landscaping purposes. In Commonwealth v. Braun, 88 D. & C. 257, the same result was reached.

In Commonwealth v. Haynes, 82 D. & C. 439, defendant was arrested for failure to comply with subsection 2 and subsection 5 of section 724 of The Game

Law, in that defendant, while admittedly legally killing a deer destroying his crops, failed to report such killing within 12 hours, and did not remove the entrails of the deer and transport it to a place of safe keeping until the game warden could receive it, as required by subsection 5 of section 724. The constitutionality of subsections 2 and 5 were not in question.

In the Haynes case, defendant testified he was unable to report within the 12-hour period because of a failure in the telephone service. The evidence showed defendant did not know how to remove the entrails of a deer, or dress it out, and that he was physically unable to transport the carcass of the deer from the place in which he had killed it to place of safe keeping. Judge Trambley, President Judge of Cameron County, held that a person could not be penalized for his lack of knowledge of how to remove the entrails from a deer, and his physical inability to move the carcass to a place of safe keeping pending arrival of a game warden, stating, beginning on page 448, as follows:

" 'When strict compliance with the terms of the written law is impossible, compliance as near as can be, under judicial sanction, is allowed. This principle was recognized by Judge Endlich in his scholarly work on the Interpretation of Statutes. He says, section 441, page 627: "Enactments which impose duties on conditions are, when these are not conditions precedent to the exercise of a jurisdiction, subject to the maxim that 'lex non cogit ad impossibilia aut inutilia.' They are understood as dispensing with the performance of what is prescribed, when performance is impossible (e) ; for the law, in its most positive and peremptory injunctions, is understood to disclaim, as it does in its general aphorisms, all intention of compelling impossibilities, and this general exception is a general rule of statutory construction." See, also, the same author, Section 265, page 351. "It is a settled rule of construc-

tion that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences, or is impossible and incapable of execution" ': Dalzell v. Kane et al., 321 Pa. 120."

Under the stipulation of facts in the instant case, defendant possessed only a .22 caliber rifle, and no other firearm. He calls attention to other provisions of The Game Law, particularly section 702, which prohibits killing of deer or other game on Sundays or at night, except in defense of person or property, without any regulation concerning the character of the weapon with which the game is killed.

Section 704 of The Game Law is referred to, which permits the killing of deer or other big game during hunting season, with a gun propelling one ball or bullet, from either a .22 or .25 caliber rimfired cartridge, or by the use of a bow and arrow.

It is rather incongruous, to say the least, that a deer may be killed in the designated hunting season with a .22 caliber gun, but may not be killed in protection of person or property with a .22 caliber gun. The limitation in section 704 to a rimfired .22 or .25 caliber cartridge may have its reason, but that question is not here before us.

The right of the citizens of the Commonwealth of Pennsylvania to protect their lives and property is paramount; and the continuance of that right is assured by article I, sec. 1, of the Constitution of Pennsylvania. Section 724 of The Game Law, including its subsections, does not destroy that guaranteed right, but, as the Commonwealth contends, does attempt to regulate the manner in which citizens may protect their lives and property, insofar as destruction thereof is involved with wild animals and game.

However, as pointed out in the Haynes case, supra, such regulations must be reasonable and not burden-

some. It is just as burdensome to compel a farmer or householder to keep and possess a .25 caliber firearm in order to protect his property outside of hunting season as it is to compel every property owner to be able to dress out a deer and transport its carcass to a place of safe keeping until a game warden can arrive to accept the carcass.

At the argument, counsel for defendant and the district attorney agreed that the portion of the stipulation which states defendant notified the proper game authority of such killing had been inserted by inadvertence. However, if the killing was not reported as required by The Game Law, the prosecution should have been for failure to report the killing, and not for killing with a .22 caliber firearm. Under the facts as stipulated, however, the requirement is that an owner of property, whether farming for livelihood, or operating a vegetable garden, or a lawn of grass around his property, may protect that from wild game by killing the game. Further limitation on that right to a .22 caliber firearm is an unreasonable and burdensome restriction, and does curtail the constitutional right, and one inherent under the American concept of government, to possess and protect one's property, as well as his life.

We therefore hold that subsection 2 of section 724 of The Game Law of 1937, 34 PS §1311.724, sec. 2, in the requirement that game must be killed with a .25 caliber firearm in the protection of one's property is unconstitutional.

### Order

Now, August 18, 1960, judgment of guilty is set aside, and the $300 fines paid by defendant are to be refunded to him, plus the costs of $9.

Exception noted.